UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ SEP 28 2007 ★
LONG ISLAND OFFICE

**FRANK BARONE**
**Plaintiff**

(SY)

vs.

**DAVOL, INC. and C.R.BARD, INC.**
**Defendants**

**Civil Action No.:** CV-07 4068

**JURY TRIAL DEMANDED**

PLATT, J.

WALL, M.J.

**COMPLAINT**

Plaintiff Frank Barone, by and through counsel Rappaport, Glass, Greene & Levine, LLP, allege upon information and belief as follows:

**JURISDICTION**

1. This Court has jurisdiction pursuant to 28 United States Code Section 1332, in that Plaintiff is a citizen of a state which is different from the State where defendant is incorporated and has its principal place of business, and the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00) as to plaintiff, exclusive of interest and costs. All facts and law in controversy in this action are between parties who are citizens of different states as herein alleged.

**PARTIES**

2. Plaintiff, FRANK BARONE ("Mr. Barone") is a citizen and resident of the County of Suffolk, State of New York.

3. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of Delaware. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston Rhode Island. DAVOL can be served through its President Daniel Lafever, 15 Shadowbrook Crossing, East Greenwich, Rhode

Island 02818. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of New York.

## VENUE

4. Venue is proper in this Court based on the fact that the substantial part of the events or omissions giving rise to the claim occurred within this district of New York.

## STATEMENT OF THE FACTS

5. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into Mr. Barone's body.

6. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Mr. Barone's body.

7. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application the Kugel Patch was authorized by the FDA as a Class II medical device.

8. This action involves the Kugel Patches manufactured by Defendants between 2001 and March 2006. These Kugel Patches were sold by Defendants for implantation in patients in the course of hernia surgery repair.

9. The Kugel Mesh line of products was first manufactured by Surgical Sense, Inc., starting in or around 1996. In January of 2000, Bard acquired the Kugel line of hernia repair products from Surgical Sense, Inc. Shortly thereafter, in 2001, Bard introduced the Kugel Patch through its subsidiary, Davol.

10. The Kugel Patch, invented by Dr. Robert D. Kugel, is a polypropylene mesh prosthetic device developed to repair ventral hernias, or hernias of the abdominal region. The Kugel Patch is inserted behind the hernia defect in the abdomen through a small incision. In order to fit through the small incision of mesh is folded in half. Once inside the abdomen the mesh re-deploys as a result of a hard "memory recoil ring" (or "PET coil ring") that surrounds the mesh.

11. Due to defects in the design and manufacturing of the Kugel Patch, the "memory recoil ring" that opens the patch can break under the stress of placement of the product in the intra-abdominal space. Once the memory recoil ring has broken, it can later come loose and cause serious injuries as it travels through the body. These injuries include: intestinal perforations; ring migration through the abdominal wall; abscesses; bowel obstruction and sepsis; and chronic intestinal fistulae (abnormal connections or passageways between the intestines and other organs).

12. The Kugel Patches present and constitute an unreasonable risk of danger and injury in the following respects:

a. The memory recoil ring of the Kugel Patch is likely to malfunction after being implanted;

b. The Kugel Patch was not properly manufactured;

c. The Kugel Patch was defectively designed;

d. The Kugel Patch did not perform as safely as an ordinary consumer/patient would expect;

e. The Kugel Patch was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

f. Such further and additional defects as discovery and the evidence reveal.

13. As a result of this dangerous and defective condition, and the numerous serious injuries that have resulted, the FDA issued Class 1 recalls of the X-Large Oval, Large Oval and Large Circle varieties of the Composix® Kugel Mesh Patch. A Class 1 recall is the highest level of recall available to the FDA. It is issued when the FDA believes a medical product is dangerous or defective and predictably could cause serious health problems or death.

14. On December 22, 2005 and January 13, 2006, Davol and Bard announced the recall of the Composix® Kugel Mesh X-Large Patch. Subsequently, in March of 2006, the Defendants announced the recall of the Composix® Kugel Mesh Large Patch as well.

15. Under these FDA recalls, the following products were subject to recall:

| | | | |
|---|---|---|---|
| PC#0010206 | Bard Composix Kugel | Extra Large Oval | 8.7" x 10.7" |
| PC#0010207 | Bard Composix Kugel | Extra Large Oval | 10.8" x 13.7" |
| PC#0010208 | Bard Composix Kugel | Extra Large Oval | 7.7" x 9.7" |
| PC#0010209 | Bard Composix Kugel | Large Oval | 6.3" x 12.3" |
| PC#0010202 | Bard Composix Kugel | Large Oval | 5.4" x 7" |

PC#0010204 Bard Composix Kugel Large Circle 4.5"

16. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the aforesaid products were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, were not suitable for the purpose they were intended and were unreasonably likely to injure the products' users.

17. On September 30, 2004, Mr. Barone underwent surgery to repair a ventral hernia. A 6.3" x 12.3" Kugel Patch (Lot No. 43FOD338) was used to repair the defect.

18. The Kugel Patch hernia repair product implanted in Mr. Barone was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

19. An FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

20. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a Class I recall notice.

21. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death have been reported.

22. On March 31, 2006, the initial Class I recall on the Kugel Patch was expanded to include the type of Kugel Patch used in Mr. Barone's ventral hernia repair.

23. In the months that followed the surgery, Mr. Barone developed-abdominal pain, intestinal pain, fever and nausea.

24. On September 7, 2007, Mr. Barone was admitted to hospital for further surgery to repair and replace the recalled Kugel Patch.

25. Mr. Barone has suffered and will continue to suffer physical pain and mental anguish.

26. Mr. Barone has incurred substantial medical bills and Mr. Barone has lost wages.

27. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

28. Upon information and belief DAVOL and BARD failed to comply with the FDA application and reporting requirements.

29. Upon information and belief DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

30. Upon information and belief DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(NEGLIGENCE AND GROSS NEGLIGENCE)**

31. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-30 as though fully set forth herein.

32. Defendants DAVOL and BARD were negligent to Mr. Barone in the following respects:

33. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect, package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use the Kugel Patch.

34. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with the proper warnings, and were reasonably likely to injure the Kugel Patch's users.

35. DAVOL and BARD so negligently and carelessly designed, manufactured, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine and supplied the Kugel Patch, that they were dangerous and unsafe for the use and purpose for which it was intended.

36. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, DAVOL and BARD acted in conscious disregard of the safety of Mr. Barone.

37. Defendants DAVOL and BARD owed a duty to Mr. Barone to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

38. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

39. As a direct and proximate result of the duties breached, the Kugel Patch used in Mr. Barone's hernia repair surgery failed, resulting in Mr. Barone suffering, pain and harm.

40. As a direct and proximate result of DAVOL's and BARD'S negligence, Mr. Barone has suffered injuries and damages.

41. DAVOL's and BARD'S conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

Wherefore, Mr. Barone requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## AS AND FOR A SECOND CAUSE OF ACTION
## (STRICT LIABILITY)

42. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-41 as though fully set forth herein.

43. Defendants DAVOL and BARD are strictly liable to Mr. Barone in the following respects:

44. DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and or sold the Kugel Patch for hernia repair surgery.

45. The Kugel Patches subject to the Class I recall were defective because they failed to perform safe and effectively for the purpose they were originally designed. Mr. Barone's Kugel Patch was a Class I recalled device that failed while in his body causing him to develop serious physical complications which required subsequent, painful and unnecessary removal surgery of his Kugel Patch.

46. At all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL.

47. The Kugel Patch implanted into Mr. Barone was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

48. The Kugel Patches, like the one found in Mr. Barone, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Mr. Barone as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to Mr. Barone;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Mr. Barone;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Mr. Barone, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

s. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

49. DAVOL's and BARD'S conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious

disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

Wherefore, Mr. Barone requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(MISREPRESNTATION AND FAILURE TO WARN)**

50. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 - 49 as though fully set forth herein.

51. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to South Side Hospital for hernia repair surgeries.

52. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Mr. Barone received the Kugel Patch, they were defective and unreasonably dangerous when put to their intended and reasonably anticipated use. Further, the Kugel Patches were not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

53. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the products involved significant dangers not readily obvious to the ordinary user of the products. BARD and DAVOL failed to warn of the known or knowable injuries associated with malfunction of

the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

54. The dangerous and defective conditions in the Kugel Patches existed at the time they were delivered by the manufacturer to the distributor. At the time Mr. Barone had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

55. Mr. Barone did not know at the time of use of the Kugel Patch, not at any time prior thereto, of the existence of the defects in the Patches.

56. Mr. Barone suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD'S failure to warn.

57. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

Wherefore, Mr. Barone respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**AS AND FOR A FOURTH AND SEPARATE CAUSE OF ACTION**
**(BREACH OF IMPLIED WARRANTY)**

58. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-57 as though fully set forth herein.

59. Defendants DAVOL and BARD are liable to Mr. Barone for their breach of implied warranty in the following respect:

60. DAVOL and BARD sold the Kugel Patch which was implanted in Mr. Barone. DAVOL and BARD impliedly warranted to Mr. Barone, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which they were intended.

61. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

62. Mr. Barone, his physicians and health care providers reasonably relied on DAVOL's and BARD'S judgment, indications and statements that the Kugel Patch was fit for such use.

63. When the Kugel Patches was distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

64. Mr. Barone suffered such injuries and damages as a result of DAVOL and BARD'S conduct and actions.

Wherefore, Mr. Barone respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**AS AND FOR A FIFTH AND SEPARATE CAUSE OF ACTION**
**(BREACH OF EXPRESS WARRANTY)**

65. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-64 as though fully set forth herein.

66. Defendants expressly warranted that Kugel Patches were safe, including for users such as Frank Barone.

67. The Kugel Patches do not conform to these express representations because the Kugel Patches are not safe and have high levels of serious side effects, including life-threatening side effects.

68. In breaching their express warranty, Defendants directly and proximately caused or contributed to cause the injuries and damages caused to Mr. Barone.

Wherefore, Mr. Barone respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**AS AND FOR A SIXTH AND SEPARATE CAUSE OF ACTION**
**VIOLATION OF THE NEW YORK BUSINESS CORPORATION LAW §349**

69. Mr. Barone re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-68 as though fully set forth herein.

70. Defendants' conduct as set forth herein constituted deceptive acts or practices and involved an extensive marketing scheme that had a broader impact on consumers at large.

71. Defendants engaged in acts or practices that were deceptive or misleading in that the same were likely to mislead a reasonable consumer acting reasonably under the circumstances to ingest the products and be injured thereby.

72. Defendants' acts and practices violated New York's Business Corporation Law.

Wherefore, Mr. Barone respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

**RELIEF REQUESTED**

WHEREFORE, the Plaintiff demands judgment against the Defendants, as appropriate, on each cause of action as pled herein as follows:

(1) Award Plaintiff on account of his injuries compensatory damages and exemplary damages against Defendants on the first through fifth causes of action;

(2) Award Plaintiff such other and further relief against the defendants as the Court deems just and proper under the circumstances, including the costs and disbursements of this action.

**JURY TRIAL DEMANDED**

By: ______________________
Michael Glass
Rappaport, Glass, Greene & Levine, LLP
1355 Motor Parkway
Hauppauge, New York 11749
(631) 293-2300
# 7952

**Of Counsel:**
Rappaport, Glass, Greene & Levine, LLP
1355 Motor Parkway
Hauppauge, New York 11749
(631) 293-2300

Wesley Chadwick Cook
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36104
(334) 269-2343